JARROD L. RICKARD (BAR NO. 10203)
E-Mail: jlr@semenzarickard.com
SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Phone: (702) 835-6803
Fax: (702) 920-8669

JOSHUA A. DEL CASTILLO (*admitted pro hac vice*)
E-Mail: jdelcastillo@allenmatkins.com
ALPHAMORLAI L. KEBEH (*admitted pro hac vice*)
E-Mail: mkebeh@allenmatkins.com
ALLEN MATKINS LECK GAMBLE
   MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax: (213) 620-8816

EDWARD G. FATES (*admitted pro hac vice*)
E-Mail: tfates@allenmatkins.com
ALLEN MATKINS LECK GAMBLE
   MALLORY & NATSIS LLP
One America Plaza
600 West Broadway, 27th Floor
San Diego, California 92101-0903
Phone: (619) 233-1155
Fax: (619) 233-1158

Attorneys for Receiver
STEPHEN J. DONELL

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and STATE OF NEVADA,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN TAX SERVICE LLC, a limited liability company, et al.,<br><br>Defendants. | Case No. 2:25-cv-01894-GMN-EJY<br><br>**FIRST INTERIM REPORT AND PETITION FOR INSTRUCTIONS OF RECEIVER, STEPHEN J. DONELL**<br><br>[Proposed] Order submitted concurrently herewith] |

**TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ...................................................................................3

II.   GENERAL BACKGROUND ....................................................................................4

III.  SUMMARY OF RECEIVER'S ACTIVITIES AND EFFORTS ...........................5

    A.   Engagement Of Receivership Professionals.....................................................5

        1.   Allen Matkins Leck Gamble Mallory & Natsis LLP .........................6

        2.   Semenza Rickard Law...........................................................................6

        3.   Stapleton Group, a Part of JS Held .....................................................6

        4.   SLBiggs, a Division of Singer Lewak..................................................7

    B.   Establishment Of Receivership Website And Initial Customer Contacts .............................................................................................................7

    C.   Entity Office Visit And Takeovers....................................................................8

    D.   Document Recovery And Analysis ...................................................................9

    E.   Accounting, Receivership Asset Identification, And Asset Recovery...........................................................................................................10

    F.   Review And Analysis Of Receivership Entities' Business And Financial Activities.........................................................................................11

        1.   Analysis of Financial Documents and Other Records .....................11

        2.   Efforts to Access Pre-receivership Third-party Platforms ..............13

        3.   Designation of Additional Receivership Entities .............................13

        4.   Evaluation of the Receivership Entities' Operations........................13

IV.   OUTSTANDING MATTERS..................................................................................14

    A.   Wage Claims ....................................................................................................14

    B.   Office Leases ....................................................................................................14

    C.   Additional Document Recovery And Analysis.............................................15

    D.   Additional Asset Recovery..............................................................................15

    E.   Mitigation of Consumer Harm .......................................................................15

V.    RECOMMENDATION AND PETITION FOR FURTHER INSTRUCTIONS ...................................................................................................16

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4934-0903-5389.4

**TO THIS HONORABLE COURT AND ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE THAT** Stephen J. Donell (the "Receiver"), the Court-appointed receiver for defendants American Tax Service LLC, American Tax Solutions, American Tax Solutions LLC, ATS Tax Group LLC, Elite Sales Solutions, GetATaxLawyer.com LLC, TNT Holdings Group LLC, TNT Services Group LLC, TNT Tax Associates Inc., and each of their respective subsidiaries, affiliates, successors, and assigns (collectively, the "Receivership Entities" or "Entities"), hereby submits this *First Interim Report and Petition for Instructions* (the "Report")[1] in order to detail the tasks undertaken by the Receiver and his professionals for the period from the Receiver's appointment on October 7, 2025 through November 30, 2025 (the "Reporting Period").

## I.    PRELIMINARY STATEMENT.

Pursuant to this Court's October 7, 2025 *Ex Parte Temporary Restraining Order with Asset Freeze, Appointment of a Temporary Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue* (the "Initial Appointment Order") [ECF No. 9], as extended by subsequent orders of the Court, including, most recently, the November 20, 2025 *Preliminary Injunction* (the "Preliminary Injunction"), the Receiver has been charged with, among other things, assuming control over the Receivership Entities and their assets ("Receivership Assets" or "Assets") and taking those actions he deems necessary or appropriate to administer the Entities and their Assets; performing an analysis of the business and financial activities of the Entities; preparing an accounting; and preserving and marshaling Receivership Assets for the benefit of the receivership estate established by the Initial Appointment Order and Preliminary Injunction (the "Estate") and its potential creditors, including customers harmed by the Entities' alleged tax resolution and preparation scheme.

---

[1]   This Report is preliminary and based upon the limited information presently available to the Receiver.  It, and any conclusions presented herein, are subject to change as additional information is obtained.

As detailed below, and while the Receiver has made substantial progress in some of the above areas – including assuming authority and control over the Entities, their offices, and operations; commencing document recovery and review; commencing an accounting analysis of the business and financial operations of the Entities; identifying and recovering Assets; and undertaking efforts to mitigate harm to allegedly defrauded customers – his investigative and Asset recovery efforts remain ongoing and the Receiver believes a potentially significant amount of work remains to be completed.  Because the Receiver's efforts remain incomplete, the conclusions presented in this Report should be viewed as preliminary, and may be affected by the discovery and review of additional relevant information.

## II.   GENERAL BACKGROUND.

The Court and all interested parties are invited to review the following materials for a more detailed summary of the relevant facts underlying the above-entitled action and the instant receivership:

- *Complaint for Permanent Injunction, Monetary Judgment, and Other Relief* (the "Complaint") [ECF No. 1], filed on October 6, 2025;

- *Ex Parte Motion for a Temporary Restraining Order* [ECF No. 4], filed on October 6, 2025;

- *Initial Appointment Order* [ECF No. 9], entered on October 7, 2025;

- *Declaration of Receiver, Stephen J. Donell, Re: Commencement of Duties as Identified in Ex Parte Temporary Restraining Order with Asset Freeze, Appointment of a Temporary Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue* [ECF No. 34] (the "Initial Declaration"), filed on October 17, 2025;

- *Supplemental Declaration of Receiver, Stephen J. Donell, Re: Commencement of Duties as Identified in Ex Parte Temporary Restraining Order with Asset Freeze, Appointment of a Temporary Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary*

*Injunction Should Not Issue* [ECF No. 45] (the "Supplemental Declaration"), filed on October 24, 2025;

- *Preliminary Injunction* [ECF No. 64], Entered on November 20, 2025; and
- *Second Supplemental Declaration of Receiver, Stephen J. Donell, Regarding Status of Work as Temporary Receiver, Preliminary Observations and Conclusions* [ECF No. 62] (the "Second Supplemental Declaration"), filed on November 21, 2025.

As reflected in the above-identified pleadings and orders, the plaintiffs Federal Trade Commission and State of Nevada (each a "Plaintiff" and collectively, the "Plaintiffs")  have alleged that the Receivership Entities and their principals engaged in a fraudulent tax relief and preparation scheme whereby customers were solicited based on misleading advertisements and correspondence, and subsequently induced to make (often significant) monetary payments for services that were seldom, if ever, provided.  On the basis of their allegations, and on application to the Court, the Plaintiffs secured the appointment of the Receiver, who has diligently pursued his objectives as set forth in the Initial Appointment Order and Preliminary Injunction, including with respect to the identification, preservation, and marshalling of available Assets, a preliminary analysis of the business and financial activities of the Receivership Entities, the viability of their business operations, and their use of funds paid by customers.

## III.     SUMMARY OF RECEIVER'S ACTIVITIES AND EFFORTS.

The following reflects a summary of the Receiver's activities and efforts since the entry of the Initial Appointment Order:

### A.     Engagement Of Receivership Professionals.

In order to assist with the performance of his duties under the Initial Appointment Order and Preliminary Injunction, the Receiver has engaged the services of the following attorneys and forensic accounting specialists:

1.    Allen Matkins Leck Gamble Mallory & Natsis LLP.

The Receiver has engaged Allen Matkins Leck Gamble Mallory & Natsis LLP ("Allen Matkins") as his lead receivership counsel for this matter.  Allen Matkins was selected as a result of its decades-long and successful history representing receivers appointed in federal enforcement actions, including in actions brought by the Plaintiff Federal Trade Commission and similar agencies.  Moreover, Allen Matkins has successfully represented the Receiver in multiple state and federal receivership matters dating back to 2008, and is uniquely qualified to serve as lead receivership counsel here, given its federal equity receivership experience and expertise.  In addition, Allen Matkins currently serves as lead receivership counsel in two unrelated federal enforcement actions (including one in which the Federal Trade Commission is the plaintiff) pending before this Court.  These matters are *SEC v. Beasley, et al.*, USDC D. Nev. Case No. 2:22-cv-00612-CDS-EJY and *FTC v. Superior Servicing LLC, et al.*, USDC D. Nev. Case No. 2:24-cv-02163-GMN-MDC.

2.    Semenza Rickard Law.

The Receiver selected Semenza Rickard Law ("SR Law") as his local Nevada counsel due to SR Law's reputation in the Las Vegas legal community, its successful, prior working relationship with the Receiver's lead counsel, and its familiarity with local policies and procedures essential to the administration of receivership estates.  SR Law is presently serving as local Nevada counsel for the Receiver's lead counsel in at least three other federal receivership matters, including one in which the Federal Trade Commission is the plaintiff.  With a combined 50 years of experience practicing in the Nevada Federal District Court and before the State of Nevada's business courts, SR Law is ideally suited to serving as the Receiver's local counsel.

3.    Stapleton Group, a Part of JS Held.

The Receiver has engaged Stapleton Group, a part of JS Held ("Stapleton"), as his forensic accountants for this matter.  The Receiver selected Stapleton as his forensic accountant due to Stapleton's longstanding expertise in forensic accounting analysis,

including specifically in the receivership context, which has made the firm an invaluable asset for the Receiver's investigation of the numerous Entities and related accounts and transactions involved in this matter.  Stapleton integrates financial, operational, and digital expertise to take control of assets and stabilize operations, while conducting thorough forensic investigations.

4.     SLBiggs, a Division of Singer Lewak.

The Receiver has engaged SLBiggs, a Division of SingerLewak ("SLBiggs") as his tax accountants for this matter.  SLBiggs is a leading professional services firm with recognized expertise in financial consulting, tax preparation, insolvency, and litigation matters.  The firm has served receivers, trustees, attorneys, government agencies, and financial institutions for over 40 years, handling hundreds of receivership and bankruptcy matters, working for both federal and state court-appointed receivers, as well as Chapter 7 bankruptcy trustees.  Many of SL Biggs' cases involved tracing of funds, fraudulent conveyance analysis, and determining and resolving tax obligations for the parties involved.  SLBiggs has served as accountants in multiple federal enforcement actions, including *FTC v. John Beck Amazing Profits, LLC, et al* and the related bankruptcy cases of the defendant entity's principals, which resulted in a judgment for the plaintiff regulators in the amount of approximately $500 million; the *SEC v. J T Wallenbrock, et al*, involving a major Ponzi scheme approaching $300 million; and the *Hawaii Attorney General (Bennett) v. HGEA, UPW, et al* case involving misappropriation of Hawaii State employee benefit payments related to certain union health benefit programs.  Most recently, SLBiggs served as the Receiver's forensic accountant in the matter of *FTC v. Ascend Capventures, Inc., et al.*, USDC C.D. Cal., Case No. 2:24-CV-07660-SPG-JPR.

**B.     Establishment Of Receivership Website And Initial Customer Contacts.**

Upon the entry of the Initial Appointment Order, the Receiver established a website specific to the above-entitled action (www.fedreceiver.com/case/american-tax-service/) which he uses, among other things, to (1) provide access to case filings and updates to

interested parties; and, critically, (2) to communicate with interested parties and other stakeholders, including customers injured as a consequence of the fraud alleged by the Plaintiffs.  On his website, in addition to being able to view Court filings, interested parties can (1) review answers to "frequently asked questions" concerning the status and administration of the receivership and the Estate; (2) register for updates from the Receiver and his staff; (3) transmit information and inquiries to the Receiver; and (4) communicate directly with the Receiver and his staff.  As detailed further below, the Receiver's website has already proven to be vital to the administration of this matter.  As of the date of this Report, approximately 482 interested parties have registered, and the Receiver has received approximately 400 tips, updates, complaints, and other communications from interested stakeholders, some of which were previously reported to or summarized for the Court in his earlier filed Initial Declaration, Supplemental Declaration, and Second Supplemental Declaration.

### C.    Entity Office Visit And Takeovers.

On October 10, 2025, accompanied by Plaintiffs and federal law-enforcement personnel, the Receiver conducted simultaneous takeovers of the Receivership Entities' Las Vegas and Los Angeles offices.  On site, the Receiver and his professionals advised all Entity employees present of the commencement of the receivership, made copies of the Initial Appointment Order available, and requested immediate compliance therewith.  The Receiver and certain of his professionals, together with the Plaintiffs, then inspected each office premises and identified company records, potential Assets, and other materials of interest.  Following his site visit and inspections, the Receiver secured both locations, including by changing the locks on the premises.[2]

---

[2]    After the Receiver had secured the premises and effectively restricted access to the offices, he was advised of an attempted break-in at the Las Vegas office; at present, it does not appear that any company records or items of value were removed.  The office has been re-secured, and the Receiver is working with the office building's security team to review camera footage for additional information.  If appropriate, the Receiver will provide any relevant information to law enforcement.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4934-0903-5389.4                                    -8-

### D.      Document Recovery And Analysis.

To maximize efficiency and reduce the cost of discovery, the Receiver has obtained access to certain documents obtained by the Plaintiff regulators through its own document requests.  The Receiver understands that, collectively, the Receiver and Plaintiff regulators have dispatched over thirty (30) demand letters to banks, billing platforms, tax software service providers, and other entities, seeking the turnover of documents believed to be related or critical to their respective investigations and document analysis.  As of the date of this report, the Receiver has recovered or been provided access to tens of thousands of pages of documents, which materials are already under review by the Receiver and Stapleton.

The Receiver has issued dozens of demand letters and subpoenas to entities suspected of possessing Entity documents and materials, or information related to the operations of the Receivership Entities.  Responses to these demand letters and subpoenas have begun to arrive, and the Receiver and Stapleton are currently processing and reviewing the thousands of pages of responsive documents that have recently been turned over.  Thus far, the Receiver's analysis has confirmed the Receivership Entities maintained a large number of bank accounts, which accounts were used both to receive consumer funds and to transact with other Entity and non-Entity accounts.  The Receiver's forensic accountant is actively engaged in an extensive accounting analysis of these transactions and, as a result and as further detailed below, has tentatively confirmed that funds originating with Entity customers were subsequently diverted for purposes seemingly unrelated to the business of the Entities, including as transfers to additional bank accounts and the purchase of luxury vehicles, art, and multiple real properties in California and Nevada, each of which were purchased or financed with Entity funds.  The Receiver's professionals continue to work diligently to identify additional potential Receivership Assets and to confirm the Estate's interest in the identified Assets.

The Receiver's document recovery efforts also extend to entities believed to have pre-receivership relationships with the Receivership Entities and to have received transfers

from Entity accounts. These entities include third party tax software platforms, payroll processors, and a third-party, consumer-financing entity that appears to have offered installment loans to Entity customers to finance the Entities' purported services. Though the Receiver's document recovery efforts are ongoing, the Receiver has begun to receive productions from a combination of these sources that have supplemented his understanding of the Receivership Entities, their financial relationships with other entities, the business operations of the Receivership Entities, and – critically – the nature and amounts of any Assets recoverable for the benefit of the Estate.

### E.  Accounting, Receivership Asset Identification, And Asset Recovery.

Immediately upon his appointment, the Receiver transmitted notice of the Initial Appointment Order (including the asset freeze and turnover provisions thereof) to multiple banks and financial institutions, requesting the turnover of any accounts maintained by, in the name of, or for the benefit of the Receivership Entities. To date, the funds recovered from Entity accounts exceed $2,000,000, not including more than approximately $400,000 held in an account administered by Payliance (a payment management service) for the benefit of the Receivership Entities, which funds the Receiver expects will be turned over imminently in accordance with the provisions of the Preliminary Injunction.[3]

In addition to Assets identified and marshaled from various Receivership Entity accounts, the Receiver's investigation has identified several works of art, vehicles, and real properties in California and Nevada that appear to have been purchased or financed with funds obtained from Entity customers. The vehicles and real property are described below. The Receiver and his staff are presently evaluating the artwork, including its authenticity and value, and will provide further detail in subsequent reports.

---

[3]  Through counsel, Payliance committed to turning over the subject funds to the Receiver. Recently, Payliance advised that, as a consequence of certain Nacha (formerly, the National Automated Clearing House Association) rules, the turnover could be delayed or reduced (depending on refunds processed within Nacha deadlines post-receivership). The Receiver is presently working with Payliance in an effort to expedite the turnover of available funds. Should the funds not be timely remitted to the Receiver, the Receiver may petition this Court for an order to show cause re: civil contempt to compel their turnover, and will in that event request appropriate sanctions.

<u>Real Property Addresses</u>

- 8184 Mannix Drive, Los Angeles, California 90046; and

- 2057 Troon Drive, Henderson, Nevada 89074.

<u>Vehicle Information</u>

| Make | Model | Year | Vehicle Identification Number (Last 5 Digits) |
| --- | --- | --- | --- |
| Land Rover | Range Rover | 2022 | 46989 |
| Tesla | Cybertruck | 2024 | 33929 |
| Tesla | Model X | 2023 | 06513 |
| Jeep | Grand Cherokee | 2024 | 16259 |
| Tesla | Model X | 2019 | 53592 |
| Tesla | Model 3 | 2019 | 15700 |
| Mercedes | G-Wagon | 2022 | 46413 |

The Receiver's preliminary forensic analysis indicates that several mortgage payments on the real properties were made with Receivership Entity funds.  Similarly, the analysis reflects Receivership Entity contributions toward the purchase or lease of the above-referenced vehicles.  Should the Receiver determine, based on the Entities' books and records, that any equity in these properties or vehicles constitutes property of the Estate, he will promptly seek turnover of those Assets pursuant to the provisions of the Preliminary Injunction.

**F.     Review And Analysis Of Receivership Entities' Business And Financial Activities.**

1.     <u>Analysis of Financial Documents and Other Records.</u>

As noted above, the Receiver has served numerous demand letters and subpoenas on banks, financial institutions, tax software providers, and other entities believed to maintain accounts or records for, on behalf of, or transacting with, the Receivership

Entities and their principals and agents. The initial productions from these entities reflect significant diversions of millions of dollars in Entity funds derived from customers to the Entities' principals and agents, in a manner suggesting that the diversions were: (1) inconsistent with the Entities' claimed business purposes and operations; and (2) intended to benefit the recipients of the transfers unilaterally, with no corresponding benefit to the Entities. The documents produced by various entities and individuals, including the defendants, support the Receiver's preliminary determination that significant amounts of Entity funds were diverted to the Entities' principals and agents in a manner wholly inconsistent with the ordinary customs and practices of a legitimate commercial enterprise.

Stapleton, the Receiver's forensic accountant, has been instrumental in analyzing the financial records obtained by the Receiver thus far. Stapleton's analysis suggests a pattern of unusual transfers from the Receivership Entities to their principals, executives, and employees. Examples of these unusual transfers include, but are not limited to, the following: (1) bank transfers and expenditures reflecting a lack of separation between Receivership Entity accounts and personal accounts held by or for the benefit of the Individual Defendants (as defined in the Preliminary Injunction); (2) over $8 million in Entity funds transferred to the Individual Defendants as so-called loans, but no documented loan terms, including payment schedules and terms have been identified by the Receiver to date; (3) so called "reimbursement" distributions from the Receivership Entities to the Individual Defendants and other Entity executives that bear no apparent relationship to the Entities' business operations; and (4) diversions of millions of dollars in funds raised from Entity customers for purposes apparently unrelated to the Receivership Entities' tax resolution business, including, as noted above, enabling the Receivership Entities' principals, or their affiliates, to purchase vehicles, artwork, and multi-million-dollar properties. On the basis of these findings, the Receiver has preliminarily (but not definitively) concluded that the Receivership Entities were not engaged in a wholly legitimate business enterprise. The Receiver and Stapleton continue their efforts to

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4934-0903-5389.4

-12-

document these transactions and will provide additional information to the Court, if and as it is developed, in future interim reports.

### 2. Efforts to Access Pre-receivership Third-party Platforms.

The Receiver has undertaken targeted efforts to secure access to certain online platforms used by the Entities, their principals, and employees in the pre-receivership period. By way of example, these include Drake Software and IRSLogics (tax-preparation platforms), as well as Paycom Software (payroll services). The Receiver has recently obtained access to many relevant accounts and is in the process of analyzing the data retrieved therefrom. As the Receiver continues his review, he will provide the Court with material updates in subsequent interim reports.

### 3. Designation of Additional Receivership Entities.

To date, the Receiver's review of records relating to the Receivership Entities has identified several non-party entities that may be undisclosed affiliates, potentially controlled by the Entities' principals. If the Receiver determines that the Receivership Entities or their principals conducted business-related activities – legitimate or otherwise – through any such entities, he may designate them as additional Receivership Entities pursuant to his authority under Section XII(U) of the Preliminary Injunction.

### 4. Evaluation of the Receivership Entities' Operations.

While the Receivership Entities appear to have provided limited tax services to some customers, the information obtained and reviewed by the Receiver to date suggests a number of fundamental problems with the Entities' operations, including, among other things:

- Transfers exceeding $8 million over less than two years from Receivership Entity accounts to the Individual Defendants and Entity executives, characterized as "loans" but lacking essential terms such as maturity dates, interest rates, and supporting documentation.

- Diversion of consumer-derived funds to pay personal expenses and to purchase or finance artwork, vehicles, and real properties owned personally by the Individual Defendants.

- Reports from customers and former employees corroborating the deceptive business practices alleged in the Complaint; and

- Reports from allegedly former employees that, post-receivership, personnel affiliated with the Entities solicited them to begin work at a new tax-resolution company purportedly controlled by the Individual Defendants and not subject to the Receiver's authority and control.

Based on the information obtained and reviewed to date, the Receiver does not presently believe that the Entities operated an entirely legitimate business, and remains unconvinced that their operations can be maintained as a legitimate going concern. Accordingly, as of the date of this Report, the Receiver does not anticipate continuing the operations of the Entities.

**IV.   <u>OUTSTANDING MATTERS.</u>**

Notwithstanding the substantial progress the Receiver has made in the seven weeks since his initial appointment, and based on preliminary conclusions drawn from the above-identified efforts, the Receiver has determined that, at a minimum, the following matters remain unresolved or require additional attention:

**A.   Wage Claims.**

The Receiver is aware that a number of former employees may hold claims for unpaid wages arising from services performed for the Receivership Entities. The Receiver is investigating these claims and will assess the allowance, priority, and amount of each in accordance with applicable law, subject to any applicable variance in treatment based on the allegedly deceptive nature of the services at issue.

**B.   Office Leases.**

The Receiver anticipates abandoning the Las Vegas and Los Angeles office leases in accordance with applicable law. The Receivership Entities appear to have posted

security deposits that the landlords may apply to unpaid rent and administrative costs associated with the leases.

### C.   Additional Document Recovery And Analysis.

The Receiver and his staff continue to issue demand letters and, through counsel, subpoenas as the forensic analysis identifies additional third parties with relationships to the Receivership Entities.  These efforts include ongoing discussions with a third-party consumer-financing lender that appears to have partnered with the Entities to offer installment loans to customers for the Entities' purported services.

### D.   Additional Asset Recovery.

The Receiver is conferring with counsel for the Individual Defendants to confirm details concerning several potential Receivership Assets, such as sources of payment and financing, title/ownership, and current location.  As noted above, the Receiver intends to seek turnover of any asset ultimately determined to be property of the Receivership Entities.

### E.   Mitigation of Consumer Harm.

Since his appointment, the Receiver has undertaken several measures to mitigate consumer harm, including: (1) directing third-party processors to cease collection efforts for additional payments and canceling a number of transactions that were pending at the time of appointment; (2) notifying customers (via the Receiver's website) and the Plaintiffs of reports concerning an illegitimate program purporting to assist defrauded customers in exchange for payment; and (3) posting ongoing notices and updates to customers on the status of the receivership and related developments.  By way of example, shortly after the Receiver's appointment, former employees – including the Entities' former general counsel – advised that a tax-filing deadline was imminent.  Following a review of the consumer tax materials then-available, the Receiver concluded there was insufficient information and documentation to confirm the accuracy or completeness of any of the Entities' pre-receivership tax preparations.  To avoid compounding harm to customers based on potentially inaccurate tax preparation materials, the Receiver determined not to proceed

with filings based on those materials and instead posted a notice on his website recommending that customers consult an independent tax professional of their choosing.

## V.  RECOMMENDATION AND PETITION FOR FURTHER INSTRUCTIONS.

Based on the information presented herein, and given the Receiver's ongoing efforts under this Court's orders, the Receiver believes that there is still significant work to be performed and that certain identified Assets appear to remain subject to turnover to or collection by the Receiver for the benefit of the Estate, in an amount potentially sufficient to both cover the cost of the continued administration of the receivership and yield a surplus that may be used to make partial restitution to injured customers.  Of critical importance is the Receiver's continued document recovery and financial analysis, as the preliminary results of such efforts indicate that additional receivership entities and Assets may exist.  Accordingly, the Receiver recommends that the Court authorize him to continue performing his duties as established under the Initial Appointment Order and Preliminary Injunction, for a further ninety (90) days, at the conclusion of which the Receiver further proposes to submit a *Second Interim Report and Petition for Instructions* reporting the status of his efforts and further administrative recommendations regarding the pendency of the instant receivership.

Dated:  December 11, 2025

ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
EDWARD G. FATES
JOSHUA A. DEL CASTILLO
ALPHAMORLAI L. KEBEH

By: _____ */s/  Alphamorlai L. Kebeh* _____
ALPHAMORLAI L. KEBEH
Attorneys for Receiver
STEPHEN J. DONELL

**CERTIFICATE OF SERVICE**

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen (18) and not a party to the within action.  My business address is 865 S. Figueroa Street, Suite 2800, Los Angeles, California  90017.

On December 12, 2025, I used the United States District Court, District of Nevada's Electronic Case Filing System, with the ECF registered to Alphamorlai L. Kebeh to file the following document(s):

**FIRST INTERIM REPORT AND PETITION FOR INSTRUCTIONS OF RECEIVER, STEPHEN J. DONELL**

The ECF system is designed to send an e-mail message to all parties in the case, which constitutes service.  The parties served by e-mail in this case are found on the Court's Electronic Mail Notice List.

- **Bradley T Austin**
  baustin@swlaw.com,lmosbey@swlaw.com,docket las@swlaw.com,delvira@swlaw.com
- **Simon Barth**
  sbarth@ftc.gov
- **James Erickson Evans**
  james.evans@ftc.gov,lgreisman@ftc.gov,wmaxson@ftc.gov
- **Samantha Bilbao Feeley**
  sfeeley@ag.nv.gov,phernandez@ag.nv.gov,dpotnar@ag.nv.gov
- **Ernest D. Figueroa**
  efigueroa@ag.nv.gov,dpotnar@ag.nv.gov
- **Blakeley E. Griffith**
  bgriffith@swlaw.com,mfull@swlaw.com,docket las@swlaw.com,jfung@swlaw.com,sdugan@swlaw.com
- **Benjamin W Reeves**
  breeves@swlaw.com
- **Jarrod L. Rickard**
  jlr@semenzarickard.com,oak@semenzarickard.com, alb@semenzarickard.com
- **Ziwei Zheng**
  zzheng@ag.nv.gov,phernandez@ag.nv.gov,dpotnar@ag.nv.gov

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 12, 2025, at Los Angeles, California.

　　　　　　　　　　　　　　　　　　　*/s/ Martha Diaz*
　　　　　　　　　　　　　　　　　　　Martha Diaz