JARROD L. RICKARD (BAR NO. 10203)
E-Mail: jlr@semenzarickard.com
SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Phone: (702) 835-6803
Fax: (702) 920-8669

JOSHUA A. DEL CASTILLO (*admitted pro hac vice*)
E-Mail: jdelcastillo@allenmatkins.com
ALPHAMORLAI L. KEBEH (*admitted pro hac vice*)
E-Mail: mkebeh@allenmatkins.com
ALLEN MATKINS LECK GAMBLE
   MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax: (213) 620-8816

EDWARD G. FATES (*admitted pro hac vice*)
E-Mail: tfates@allenmatkins.com
ALLEN MATKINS LECK GAMBLE
   MALLORY & NATSIS LLP
One America Plaza
600 West Broadway, 27th Floor
San Diego, California 92101-0903
Phone: (619) 233-1155
Fax: (619) 233-1158

Attorneys for Receiver
STEPHEN J. DONELL

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, and STATE OF NEVADA,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN TAX SERVICE LLC, a limited liability company, et al.,<br><br>Defendants. | Case No. 2:25-cv-01894-GMN-EJY<br><br>**SECOND INTERIM REPORT AND PETITION FOR INSTRUCTIONS OF RECEIVER, STEPHEN J. DONELL**<br><br>[Proposed] Order submitted concurrently herewith |

**TO THIS HONORABLE COURT AND ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE THAT** Stephen J. Donell (the "Receiver"), the Court-appointed receiver for defendants American Tax Service LLC, American Tax Solutions, American Tax Solutions LLC, ATS Tax Group LLC, Elite Sales Solutions, GetATaxLawyer.com LLC, TNT Holdings Group LLC, TNT Services Group LLC, TNT Tax Associates Inc., and their respective subsidiaries and affiliates (collectively, the "Receivership Entities" or "Entities"), hereby submits this *Second Interim Report and Petition for Instructions* (the "Report") on the activities of the Receiver and his professionals for the period from December 1, 2025, through February 28, 2026 (the "Reporting Period").[1]

## I.    PRELIMINARY STATEMENT.

Pursuant to this Court's October 7, 2025 *Ex Parte Temporary Restraining Order with Asset Freeze, Appointment of a Temporary Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue* (the "Initial Appointment Order") [ECF No. 9], as extended by subsequent orders of the Court, including the November 20, 2025 *Preliminary Injunction* (the "Preliminary Injunction") [ECF No. 64], the Receiver has been charged with, among other things, assuming authority and control over the Receivership Entities and their assets ("Receivership Assets" or "Assets"); taking those actions he deems necessary or appropriate to administer the Entities and their Assets; performing an analysis of the business and financial activities of the Entities; preparing an accounting; and preserving and marshaling Receivership Assets for the benefit of the receivership estate (the "Estate") established by the Initial Appointment Order and Preliminary Injunction, and its potential creditors, including customers harmed by the Entities' alleged tax resolution and preparation scheme.

As detailed below, and while the Receiver has made substantial progress in some of the above areas—including securing the turnover of cash and confirmed non-cash Estate

---

[1]    The content included herein also includes a description of events occurring between the Reporting Period and the filing of this Report.

Assets with an estimated aggregate value of at least $3,000,000; addressing administrative matters relating to former employees of the Receivership Entities; reviewing Entity records to identify prospective additional Assets and potential avoidance claims; and undertaking efforts to mitigate harm to allegedly defrauded customers—his investigative and Asset recovery efforts remain ongoing, and additional work remains to be completed. Accordingly, the statements and conclusions in this Report are preliminary and may be revised as additional information is obtained and analyzed.

II.     **GENERAL BACKGROUND.**

The Court and all interested parties are invited to review the following materials for a more detailed summary of the relevant facts underlying the above-entitled action and the instant receivership:

- *Complaint for Permanent Injunction, Monetary Judgment, and Other Relief* (the "Complaint") [ECF No. 1], filed on October 6, 2025;

- *Ex Parte Motion for a Temporary Restraining Order* [ECF No. 4], filed on October 6, 2025;

- *Initial Appointment Order* [ECF No. 9], entered on October 7, 2025;

- *Declaration of Receiver, Stephen J. Donell, Re: Commencement of Duties as Identified in Ex Parte Temporary Restraining Order with Asset Freeze, Appointment of a Temporary Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue* [ECF No. 34] (the "Initial Declaration"), filed on October 17, 2025;

- *Supplemental Declaration of Receiver, Stephen J. Donell, Re: Commencement of Duties as Identified in Ex Parte Temporary Restraining Order with Asset Freeze, Appointment of a Temporary Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue* [ECF No. 45] (the "Supplemental Declaration"), filed on October 24, 2025;

- *Preliminary Injunction* [ECF No. 64], Entered on November 20, 2025;

- *Second Supplemental Declaration of Receiver, Stephen J. Donell, Regarding Status of Work as Temporary Receiver, Preliminary Observations and Conclusions* [ECF No. 62] (the "Second Supplemental Declaration"), filed on November 21, 2025;

- *First Interim Report and Petition for Instructions of Receiver, Stephen J. Donell* [ECF No. 67] (the "First Interim Report"), filed on December 12, 2025;

- *Stipulation and [Proposed] Order Approving and Authorizing Receiver's Sale of Personal Property Out of Receivership* [ECF No. 74] (the "Personal Property Stipulation"), filed on January 30, 2026;

- *Stipulation and [Proposed] Order Modifying the Preliminary Injunction* [ECF No. 77] (the "Turnover Stipulation"), filed on February 10, 2026; and

- *Notice of Recorded Lis Pendens* [ECF No. 81], filed on March 10, 2026.

As reflected in the above-identified pleadings and orders, the plaintiffs Federal Trade Commission and the Nevada Attorney General (each a "Plaintiff" and collectively, the "Plaintiffs") have alleged that the Receivership Entities and their principals engaged in a fraudulent tax relief and preparation scheme whereby customers were solicited based on misleading advertisements and correspondence, and subsequently induced to make (often significant) monetary payments for services that were seldom, if ever, provided.  On the basis of their allegations, and on application to the Court, the Plaintiffs secured the appointment of the Receiver, who has diligently pursued his objectives as set forth in the Initial Appointment Order and Preliminary Injunction, including with respect to the identification, preservation, and marshalling of available Assets, analysis of the business and financial activities of the Receivership Entities, the viability of their business operations, and their use of funds paid by customers.  As of the filing of this Report, the Receiver has recovered approximately $2.3 million in cash, turned over from a variety of sources and not including approximately $300,000 currently held in an account maintained by or for the benefit of the Receivership Entities, along with approximately $600,000 in

non-cash Assets, comprised of the estimated equity held in a real property Asset and one passenger vehicle.

## III.   SUMMARY OF RECEIVER'S ACTIVITIES AND EFFORTS.

The following reflects a summary of the Receiver's activities and efforts during the Reporting Period:

### A.   Accounting, Receivership Asset Identification, And Asset Recovery.

#### 1.   Turnover of Funds Held in Financial Accounts.

As detailed in the First Interim Report, the Receiver transmitted notice of the Initial Appointment Order to multiple banks and financial institutions requesting the turnover of funds in accounts held by or for the benefit of the Receivership Entities.  To date, the funds recovered from Entity accounts exceed $2 million.[2]

In addition to the amounts already recovered from Receivership Entity accounts, the Receiver identified at least $400,000 in Receivership Entity funds held in an account administered by Payliance, a payment processing service.  Through counsel, Payliance committed to turning over to the Receiver the bulk of all available funds, but cautioned that because of then-pending refund requests and deadlines established under NACHA (formerly, the National Automated Clearing House Association) rules, Payliance would likely be unable to turn over to the Receiver the entire identified balance in the subject account.  As of the end of the Reporting Period, Payliance had turned over $250,000 to the Receiver.  Payliance has represented that any remaining procedural or administrative impediments have been or will soon be resolved, and the Receiver expects that additional funds will be turned over in the near term.

#### 2.   Turnover of Real Property Assets.

In addition to Assets identified and marshaled from the Receivership Entity accounts addressed above, the Receiver's investigation further identified two real properties that were purchased or financed, at least in part, with funds traced to Entity

---

[2]   Attached hereto as **Exhibit 1** are true and correct copies of the Receiver's interim statements for January and February of 2026.

accounts. These real properties are located in (i) Henderson, Nevada (the "Troon Property"), and (ii) Los Angeles, California (the "Mannix Property").

Pursuant to the Turnover Stipulation and the order thereon [ECF No. 78], the Individual Defendants (as defined in the Preliminary Injunction) agreed to turn over title and possession of the Troon Property to the Receiver. As of the filing of this Report, the Receiver has secured possession of the Troon Property, retained a broker to market and list the property for sale (subject to Court approval), and is coordinating with the Individual Defendants and a title insurer to finalize the transfer of title.

Despite the Individual Defendants having provided the Receiver with access to the Troon Property, the Receiver notes that they appear to have failed to fully comply with the Turnover Stipulation's requirements. Specifically, the stipulation required the turnover of the Troon Property in "broom clean condition", along with delivery of all keys and codes.[3] Instead, the Individual Defendants provided the Receiver only with the garage-door code, and turned the Troon Property over to the Receiver in a damaged and unclean condition, including by, among other things: (a) forcibly removing fixtures, (b) abandoning broken furniture, (c) damaging the property's walls and water system, (d) leaving piles of trash in the garage and exterior areas of the property, and (e) failing to repair a broken window. The Receiver is assessing the extent of the damage and undertaking necessary repairs to make the property marketable and suitable for showings to prospective buyers. Based on information currently available, the Receiver estimates that the equity in the Troon Property is approximately $600,000. That estimate is likely to be reduced by, at least, the costs required to repair the damage and waste left by the Individual Defendants.

In addition and out of an abundance of caution should it ultimately be determined to be a Receivership Asset, the Receiver has made efforts to preserve the value of the Mannix Property pending further disposition. The initial reporting from the Receiver's forensic accountants suggests that the purchase of the Mannix Property included funds from Entity

---

[3] Turnover Stipulation at 2.

accounts. To protect the Mannix Property from potential foreclosure by secured lenders and other title-related risks during the pendency of the receivership, the Receiver recorded a notice of pending receivership against the Mannix Property on March 9, 2026. At present, the Receiver estimates that the equity in the Mannix Property to be approximately $900,000.

### 3. Turnover of Vehicles.

As noted in the First Interim Report, the Receiver identified several vehicles that appear to have been purchased with funds obtained from Entity customers. Since that time, the Receiver has concluded that at least one of those vehicles, a 2024 Tesla Cybertruck, constitutes an Estate Asset subject to turnover pursuant to the Preliminary Injunction and the Personal Property Stipulation. The Receiver has coordinated with the Individual Defendants to effectuate the turnover of possession and title to the Cybertruck and is conferring with sales professionals to determine the sale process most likely to maximize the vehicle's value, consistent with the Personal Property Stipulation.

With respect to the remaining identified vehicles, the Receiver is continuing his analysis to determine (i) whether the vehicles constitute Estate Assets and (ii) whether the equity in the vehicles is sufficient to justify the anticipated expense of effectuating their turnover and sale.

### B. Document Recovery And Analysis.

During the Reporting Period, the Receiver obtained thousands of pages of documents responsive to subpoenas served upon third parties believed to possess Entity records or information concerning the Entities' operations or Assets. The Receiver and his forensic accountant, Stapleton Group, a part of JS Held, are processing and reviewing the substantial productions received to date, which total thousands of pages and continue to grow.

The Receiver's review of the Entities' financial records also identified a third-party lender that contracted with the Receivership Entities to provide loans to Entity customers in order to finance those customers' payment for the Entities' purported tax-resolution

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

4910-6129-3208.4

services.  During the Reporting Period, the Receiver investigated the lender's relationship with the Entities, including via a subpoena for documents and extensive discussions with its counsel, in order to assess whether the lender's involvement contributed to, or otherwise facilitated, the Receivership Entities' allegedly fraudulent conduct.  Based on the information obtained to date, the lender appears to be a legitimate separate business; further, the Receiver has confirmed that the lender terminated its relationship with the Receivership Entities nearly a year before the Receiver's appointment, after discovering allegations that the Entities violated certain consumer-protection regulations in the State of Wisconsin.[4]  Should the Receiver obtain any information suggesting actionable misconduct by, or an improper relationship with, the lender, he will continue the investigation and advise the Court accordingly.

**C.     Estate Administration And Mitigation Of Consumer Harm.**

During the Reporting Period, the Receiver has taken several measures to address outstanding Estate administration issues and mitigate consumer and third party harm, including maintaining communications with injured consumers and addressing issues relating to the Entities' former employees.

1.     Communications with Injured Consumers.

As reflected in the Receiver's First Interim Report, the Receiver established a website specific to the above-entitled action (www.fedreceiver.com/case/american-tax-service/) to provide updates and access to relevant pleadings to facilitate communications with interested parties, including injured consumers.  The Receiver continues to maintain the website and interface with interested parties, including by issuing a warning to consumers regarding persons allegedly offering refunds or other reimbursements of cash paid to the Receivership Entities in exchange for further payment, and posting instructions for former employees in connection with the termination of their employment with the Entities.

---

[4]   *See* Complaint at 11 ¶ 38 (Reference to unlawful practices conducted by the Receivership Entities and alleged by Wisconsin state authorities).

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4910-6129-3208.4                                                                    -8-

2.    Matters Relating to Former Employees.

The Receiver has also resolved or begun to resolve a number of administrative items relating to the Receivership Entities' former employees.

First, the Receiver has addressed former employees' requests for Form W-2 Wage and Tax Statements ("W-2s").  Specifically, many former employees of the Receivership Entities had contacted the Receiver to advise that they had not been issued W-2s in the pre-receivership period, which materials were necessary for the employees to satisfy tax and other related obligations.  To address those requests, the Receiver coordinated with the Entities' pre-receivership payroll processor to obtain and transmit W-2s to all known employees.  As of the filing of this Report, W-2 statements have been mailed to each employee's last known address, as reflected in the Entities' records.

Second, the Receiver is presently working with the third-party administrator for the Entities' 401(k) plan to address any outstanding issues, and to wind down the plan and permit beneficiaries to roll their funds over into other plans.  The Receiver has received inquiries from multiple parties, including the U.S. Department of Labor (the "Department of Labor"), regarding potential deficiencies in plan administration during the pre-receivership period.  Accordingly, the Receiver has requested that the plan administrator (i) interface with the Department of Labor relating to the Receivership Entities' 401(k) plan; (ii) assess and confirm any deficiencies and propose corrective actions; and (iii) once any deficiencies are corrected, facilitate the termination and wind-down of the plan.

Third, the Receiver is assessing potential wage claims against the Estate.  With the assistance of counsel, the Receiver has begun evaluating the statutorily capped amount and priority of any such claims.  It is important to note, however, that the record in this action and the materials in the Receiver's possession suggest that certain employees were likely aware of, and in some cases knowingly participated in, the Entities' allegedly fraudulent and deceptive business practices.[5]  The Receiver's analysis indicates that claims held by

---

[5]    *See* Plaintiff's Motion to Modify the Preliminary Injunction [ECF No. 79] at 4-8 (showing that certain former employees assisted the Individual Defendants in efforts to

former employees who engaged in such conduct may be subject to disallowance. Accordingly, the Receiver recommends that wage claims held by former employees be carefully analyzed before a final determination is made regarding the allowance, priority, and amount of each claim.

### D.    Abandonment Of Office Leases And Personal Property.

During the Reporting Period, the Receiver made substantial efforts to preserve the value of the Estate, including by abandoning the Estate's leasehold interest in the Entities' former Las Vegas and Los Angeles office locations.  Given his suspension of Entity operations, the Receiver determined that the Estate no longer had any need for its office spaces.  Moreover, the Estate's leasehold interests were accruing rent at a rate of more than $25,000 per month.  Accordingly, after securing all relevant information and records stored in the offices, the Receiver abandoned the Entities' leasehold interests and surrendered possession to the respective landlords in December 2025.

The Receiver also abandoned all personal property remaining at the office locations. During the Reporting Period, the Receiver conducted a preliminary assessment of the personal property's value and apparent ownership, including by conducting Uniform Commercial Code lien searches.  Based on that review, the Receiver determined that all of the remaining personal property likely either lacked material value or was potentially subject to purported liens held by U.S. Bank National Association and the United States Small Business Administration.  The Receiver accordingly concluded that the personal property did not provide any material value to the Estate and therefore provided notice to the purported lienholders of his intent to abandon any Estate interest in the property, and subsequently abandoned such property.

### E.    Addressing Pending Litigation Matters.

Consistent with the litigation-stay provisions of the Preliminary Injunction, the Receiver has endeavored to identify pending litigation matters involving the Receivership

covertly establish a new tax-debt relief entity and circumvent this Court's orders).

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4910-6129-3208.4

-10-

Entities and to provide notice of the instant receivership to relevant parties. To date, the Receiver has addressed nine (9) such litigation matters by notifying counsel of the pendency of the receivership and the stay imposed pursuant to the Preliminary Injunction, as well as by filing notices of the pending receivership in those actions. In addition, the Receiver prevented the commencement of an additional litigation matter threatened against the Receivership Entities in the post-receivership period. The Receiver anticipates that the identified pending litigation matters will not impose a significant administrative or financial burden upon the Estate during the pendency of the receivership, but will nonetheless continue to monitor the litigation and address any issues, if and as they arise.

### F. Review And Analysis Of Receivership Entities' Business And Financial Activities.

As described in the First Interim Report, the Receiver's forensic accountants have identified significant and unusual transfers of funds derived from Entity customers to the Entities' principals, executives, and employees—suggesting that the transfers were intended to benefit the recipients of the transfers unilaterally, with no corresponding benefit to the Entities. As part of the next step in the Receiver's investigation, the Receiver is working with his forensic accountants to cross-reference those transfers against the Receivership Entities' records to identify transfers recoverable via fraudulent transfer actions or similar avoidance claims. Should the Receiver determine that the Estate holds viable avoidance claims of material value, he will notify the Court and seek to assert such claims accordingly.

## IV. OUTSTANDING MATTERS.

Notwithstanding the substantial progress the Receiver has made during the Reporting Period, and based on preliminary conclusions drawn from the above-identified efforts, the Receiver has determined that, at a minimum, the following matters remain unresolved or require additional attention:

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

4910-6129-3208.4

**A.     Assessment Of Prospective Avoidance Claims.**

As noted above, the Receiver is working with his forensic accountants to understand the context regarding a number of suspicious and unusual transfers between the Receivership Entities and third parties.  The Receiver continues to confer with his staff and counsel to analyze these transfers, determine whether they give rise to viable avoidance action claims, and, if in the best interests of the Estate, pursue appropriate litigation to recover any avoidable transfers for the benefit of the Estate.

**B.     Recovery Of Funds In Accounts Held By Or For The Benefit Of The Receivership Entities.**

The Receiver continues to confer with Payliance and one financial institution to secure the turnover of remaining balances held in Receivership Entity accounts.  Based on presently available information, the Receiver anticipates that his efforts in this regard may result in the turnover of hundreds of thousands of additional Estate funds in the near future.

**C.     Liquidation Of Estate Assets.**

Now that the Receiver has secured possession of the Troon Property, he is working with the title company and his broker to confirm the transfer of title and to market the property for sale in accordance with the Turnover Stipulation.  Additionally, the Receiver is conferring with his professionals to confirm the highest and best method of sale for the Cybertruck, consistent with the Personal Property Stipulation.  Finally, the Receiver will continue to assess whether the Mannix Property, the remaining vehicles, and any other identified property constitute Receivership Assets and, if so, will pursue turnover and liquidation of the Asset(s) as appropriate.

**D.     Investigation Of Former Employee Wage Claims.**

The Receiver expects to confer with the Plaintiffs regarding an efficient process for evaluating any wage claims asserted by former employees, including, critically, assessing whether particular claimants had knowledge of, or participated in, the Receivership Entities' alleged scheme.

**E.      Resolution And Wind-Down Of Entity 401(k) Account.**

The Receiver is working with the Receivership Entities' pre-receivership third-party administrator to identify any pre-receivership deficiencies in the Entities' 401(k) plan. Once any such deficiencies are identified and addressed as necessary, the Receiver will coordinate with the administrator to wind-down and terminate the plan.

**V.      RECOMMENDATION AND PETITION FOR FURTHER INSTRUCTIONS.**

Based on the information presented herein, and given the Receiver's ongoing efforts under this Court's orders, the Receiver believes that there is still significant work to be performed and that certain identified Assets appear to remain subject to turnover to or liquidation by the Receiver for the benefit of the Estate, in an amount likely sufficient to both cover the cost of the continued administration of the receivership and still yield a net benefit to the Estate and its stakeholders. Accordingly, the Receiver recommends that the Court authorize him to continue performing his duties as established under the Initial Appointment Order and Preliminary Injunction, for a further ninety (90) days, at the conclusion of which the Receiver will file a further report on the status of his efforts and further recommendations regarding the pendency of the instant receivership.

Dated:  March 27, 2026

ALLEN MATKINS LECK GAMBLE
 MALLORY & NATSIS LLP
EDWARD G. FATES
JOSHUA A. DEL CASTILLO
ALPHAMORLAI L. KEBEH

By:      /s/  Alphamorlai L. Kebeh
ALPHAMORLAI L. KEBEH
Attorneys for Receiver
STEPHEN J. DONELL

## CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen (18) and not a party to the within action. My business address is 865 S. Figueroa Street, Suite 2800, Los Angeles, California 90017.

On March 27, 2026, I used the United States District Court, District of Nevada's Electronic Case Filing System, with the ECF registered to Alphamorlai L. Kebeh to file the following document(s):

**SECOND INTERIM REPORT AND PETITION FOR INSTRUCTIONS OF RECEIVER, STEPHEN J. DONELL**

The ECF system is designed to send an e-mail message to all parties in the case, which constitutes service. The parties served by e-mail in this case are found on the Court's Electronic Mail Notice List.

- **Bradley T Austin**
  baustin@swlaw.com,lmosbey@swlaw.com,docket las@swlaw.com,delvira@swlaw.com
- **Simon Barth**
  sbarth@ftc.gov
- **James Erickson Evans**
  james.evans@ftc.gov,lgreisman@ftc.gov,wmaxson@ftc.gov
- **Samantha Bilbao Feeley**
  sfeeley@ag.nv.gov,phernandez@ag.nv.gov,dpotnar@ag.nv.gov
- **Ernest D. Figueroa**
  efigueroa@ag.nv.gov,dpotnar@ag.nv.gov
- **Blakeley E. Griffith**
  bgriffith@swlaw.com,mfull@swlaw.com,docket las@swlaw.com,jfung@swlaw.com,sdugan@swlaw.com
- **Benjamin W Reeves**
  breeves@swlaw.com
- **Jarrod L. Rickard**
  jlr@semenzarickard.com,oak@semenzarickard.com, alb@semenzarickard.com
- **Ziwei Zheng**
  zzheng@ag.nv.gov,phernandez@ag.nv.gov,dpotnar@ag.nv.gov

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

4910-6129-3208.4

-14-

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 27, 2026, at Los Angeles, California.


*/s/ Martha Diaz*
Martha Diaz