JARROD L. RICKARD (BAR NO. 10203)
E-Mail: jlr@semenzarickard.com
SEMENZA RICKARD LAW
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Phone: (702) 835-6803
Fax: (702) 920-8669

JOSHUA A. DEL CASTILLO (*admitted pro hac vice*)
E-Mail: jdelcastillo@allenmatkins.com
ALPHAMORLAI L. KEBEH (*admitted pro hac vice*)
E-Mail: mkebeh@allenmatkins.com
ALLEN MATKINS LECK GAMBLE
    MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax: (213) 620-8816

EDWARD G. FATES (*admitted pro hac vice*)
E-Mail: tfates@allenmatkins.com
ALLEN MATKINS LECK GAMBLE
    MALLORY & NATSIS LLP
One America Plaza
600 West Broadway, 27th Floor
San Diego, California 92101-0903
Phone: (619) 233-1155
Fax: (619) 233-1158

Attorneys for Receiver
STEPHEN J. DONELL

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| FEDERAL TRADE COMMISSION and STATE OF NEVADA,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN TAX SERVICE LLC, a limited liability company, et al.,<br><br>Defendants. | Case No. 2:25-cv-01894-GMN-EJY<br><br>**SECOND INTERIM APPLICATION FOR PAYMENT OF FEES AND REIMBURSEMENT OF EXPENSES OF RECEIVER, STEPHEN J. DONELL, AND HIS PROFESSIONALS**<br><br>[Proposed] Order submitted concurrently herewith] |

In accordance with Section XVIII of this Court's October 7, 2025 *Ex Parte Temporary Restraining Order with Asset Freeze, Appointment of a Temporary Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should not Issue* (the "Initial Appointment Order") [ECF No. 9], as extended by this Court's *Preliminary Injunction* [ECF No. 64] (the "Preliminary Injunction"), Stephen J. Donell (the "Receiver"), the Court-appointed receiver for defendants American Tax Service LLC, American Tax Solutions, American Tax Solutions LLC, ATS Tax Group LLC, Elite Sales Solutions, GetATaxLawyer.com LLC, TNT Holdings Group LLC, TNT Services Group LLC, TNT Tax Associates Inc., and their respective subsidiaries and affiliates (collectively, the "Receivership Entities" or "Entities"), along with his general receivership counsel, Allen Matkins Leck Gamble Mallory & Natsis LLP ("Allen Matkins"), his forensic accounting firm, Stapleton Group, a part of JS Held ("Stapleton"), his tax professionals, SLBiggs, a division of Singer Lewak ("SLBiggs"), and local counsel Semenza Rickard Law ("SR Law" and, together with Allen Matkins, Stapleton, and SLBiggs, the "Professionals"), hereby jointly submit this second interim application for payment of fees and reimbursement of expenses (the "Fee Application" or "Application").

## I.  INTRODUCTION.

The Fee Application covers the fees and expenses incurred by the Receiver and his Professionals (collectively, the "Applicants") in connection with performing the Receiver's Court-ordered duties for the period from November 1, 2025 through January 31, 2026 (the "Application Period").  The Applicants request the Court's approval of their fees and expenses and authorization for the Receiver to pay the requested amounts from the funds of the receivership estate (the "Receivership Estate" or "Estate").  With respect to SR Law, and as further detailed in section VII *infra*, the Application Period includes SR Law's fees and expenses incurred in the period previously addressed in the Receiver's *First Interim Application for the Payment of Fees and Reimbursement of Expenses* [ECF No. 69] (the "First Fee Application").  The fee and expense amounts requested are as follows:

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

4928-0248-6165

| Applicant | Fees | Expenses | Total |
|---|---|---|---|
| Receiver | $242,303.75 | $9,952.80 | $252,256.55 |
| Allen Matkins | $228,507.75 | $1,203.67 | $229,711.42 |
| Stapleton | $99,997.53 | $1,635.77 | $101,633.30 |
| SLBiggs | $11,736.50 | $0.00 | $11,736.50 |
| SR Law[1] | $11,188.00 | $1,189.12 | $12,377.12 |
| **TOTAL:** | **$593,733.53** | **$13,981.36** | **$607,714.89** |

The Receiver has applied a discount of 10% to his firm's fees incurred during the Application Period.  Likewise, as an accommodation to the Receiver and the Estate, Allen Matkins has applied a 10% across-the-board discount to its standard billing rates, and a rate freeze for all attorney and paralegal timekeepers for the duration of this engagement.[2]  Similarly, SR Law and Stapleton have also applied a 10% discount to their standard billing rates.  As a consequence, the fees charged by the Receiver, Allen Matkins, SR Law, and Stapleton are meaningfully below those that would have been charged at their standard billing rates, with a substantial resultant benefit to the Estate.

It should be noted that the initial phase of a receivership is generally the most labor-intensive as much work is needed in a short period of time to secure critical assets, gather and analyze key data and information, establish a website and line of communication with consumers and employees, and address other urgent matters.  As the receivership is stabilized and assets have been secured, fees and costs will generally decrease over time.  As reflected in the Receiver's concurrently submitted *Second Interim Report and Petition for Instructions* (the "Report"), the Receiver is diligently working with his professionals to advance the Receivership Estate to a state of stability.  Furthermore, while the Estate presently holds nearly $2 million[3] in cash, the Receiver has identified what he estimates to

---

[1]   The amounts reflected herein are inclusive of SR Law's fees and expenses incurred in the period addressed in the First Fee Application.
[2]   Allen Matkins has also written off thousands of dollars in fees as an additional accommodation to the Estate.
[3]   This amount does not include additional amounts held in a receivership entity payroll

be approximately an additional $1 million in potential assets recoverable for the benefit of the Estate. The Receiver and his Professionals have undertaken significant work pursuant to the Court's orders, have made substantial progress in a short period of time, and should be compensated on an interim basis for their work.

## II.    GENERAL SUMMARY.

During the Application Period, and with the assistance of his professionals, the Receiver made substantial progress in the satisfaction of his duties and the objectives outlined by this Court in its Initial Appointment Order and Preliminary Injunction. Among other things, the Receiver continued to make progress in analyzing Receivership Entity records to trace Entity funds to potential assets, identifying and recovering assets of the Receivership Estate (the "Receivership Assets" or "Assets"), including obtaining court approval to take possession of and sell a vehicle and real property asset, and attending to miscellaneous issues arising as a result of the Receivership Entities' pre-receivership business practices. Of note, the Receiver's efforts to marshal Assets have resulted in the recovery of Assets worth over $2 million, in the aggregate, since the inception of the receivership.

Given the amount and significance of the work completed by the Applicants during the Application Period, the Applicants respectfully submit that the corresponding fees and expenses incurred during that period are reasonable and appropriate and should be approved and paid, on an interim basis, in the amounts indicated above.

## III.    THE RECEIVER'S FEES AND EXPENSES.

The Receiver was appointed at the behest of the Plaintiffs, the Federal Trade Commission and the Nevada Attorney General (the "Plaintiffs") based, in part, on his extensive experience in the federal equity receivership space, including his experience investigating allegedly fraudulent schemes, evaluating the viability of business enterprises,

account, which the Receiver expects to be turned over imminently and as further described in the Report.

and recovering assets for scheme victims.  He has applied his experience in all of these areas here.

Specifically, during the Application Period, the Receiver, his staff, and his Professionals worked diligently to: (a) preserve the status quo and prevent harm to injured customers of the Entities; (b) identify and secure Receivership Assets; (c) conduct a detailed examination of the business activities and financial transactions of the Receivership Entities; (d) obtain and review substantial documentation from financial institutions and other third parties formerly engaged with the Receivership Entities; and (e) address matters arising from the indefinite suspension of the Receivership Entities' operations.  The Receiver's investigation remains ongoing, as described in the Report.

In order to undertake these efforts, and during the Application Period, the Receiver and his staff coordinated closely with the Plaintiffs and individual defendants Terrance Selb and Tyler Bennett (the "Individual Defendants"), through their respective counsel, regarding the turnover of Receivership Assets, including a vehicle and a real property asset located in Henderson, Nevada.  The Receiver and his staff also continued to coordinate with financial institutions regarding the turnover of funds in accounts held by or for the benefit of the Receivership Entities, and to analyze records produced by third-party platforms in connection with issues arising from the suspension of the Receivership Entities' operations.  Detailed summaries of the work performed by the Receiver are attached hereto as **Exhibit 1** in the form of the Receiver's monthly invoices, which contain the billing entries detailing the tasks performed by the Receiver and his staff during the Application Period.

The Receiver has also continued to communicate with affected customers and other interested parties through his website, www.fedreceiver.com, including by posting key filings in this action, responding to customer and vendor inquiries, and issuing critical notices regarding alleged efforts by the Individual Defendants or their affiliates to establish new entities purporting to offer similar tax-resolution services.  The website also includes a portal through which customers and other interested parties may submit materials for the

Receiver's review.  In addition, the Receiver and his staff have responded to hundreds of phone calls and emails from affected customers and other interested parties including trade creditors.

The Receiver's efforts have so far proved successful.  He has ceased all business operations while also preserving the status quo in terms of documents, records and consumer information, engaged in dialogue with customers, and helped prevent further harm by alerting customers to suspected new efforts to defraud them.  With respect to his investigative and asset recovery efforts, as of the date of the filing of this Application, the Receiver has successfully obtained records which suggest that more than $700,000 in funds were improperly diverted from the Receivership Entities, their principals, or related entities to purchase or complete the purchase of at least two real properties[4] and four vehicles.  Indeed, title to one vehicle has already been transferred to the Receiver, and the Individual Defendants are currently in the process of turning over title to one real property asset to the Receiver for sale.  The Receiver has also obtained turnover of more than $2,000,000 in cash.  The Receiver continues to issue demand letters and subpoenas for bank records and other relevant materials and, with the assistance of his Professionals, is conducting forensic tracing to identify additional Receivership Assets.

Finally, the Receiver's staff has continued to communicate with numerous allegedly defrauded consumers, many of whom have provided substantial information and documents regarding the ATS enterprise to the Receiver and counsel for the Plaintiffs. These cooperating consumers have supplied records of the Receivership Entities' communications with them and shared information that appears to corroborate many of the allegations in the complaint initiating the above-entitled action, particularly concerning the defendants' allegedly deceptive business activities.  This information, combined with other evidence obtained by the Receiver, has been critical to the Receiver's preliminary finding that the Receivership Entities cannot be operated legally and profitably, and therefore their

---

[4]   At present, the Receiver believes the real properties have an aggregate equity value in excess of $1 million.

operations must be suspended as provided for in the Initial Appointment Order and Preliminary Injunction.

The Receiver's recent conclusions and recommendations are further detailed in his concurrently filed Report.

## IV.   ALLEN MATKINS' FEES AND EXPENSES.

### A.   The Receiver's Engagement of Allen Matkins

Allen Matkins was retained by the Receiver concurrently with his appointment. The Receiver selected Allen Matkins as his lead receivership counsel due to the firm's extensive experience and expertise in federal equity receivership matters, including enforcement actions prosecuted by the Plaintiffs.  Allen Matkins has served as counsel to federal equity receivers in dozens of cases, has represented a variety of constituents in similar bankruptcy and creditors' rights matters, and has significant substantive experience in related areas, including bankruptcy, litigation, and real estate.  The firm has brought this vast experience to bear in this matter, substantially reducing the hours and fees required to address urgent legal matters facing the Receivership Estate.

### B.   Services Rendered During the Application Period

During the Application Period, Allen Matkins extensively assisted the Receiver in the performance of his duties, including by assisting in his investigation, document recovery, and asset location and recovery efforts.  Overall, on account of its services rendered during the Application Period, Allen Matkins billed 301.7 hours for a total of $228,507.75 in fees across the following work categories:

| Category | Hours | Fees |
|---|---|---|
| General Receivership | 93.0 | $69,426.90 |
| Asset Recovery & Management | 67.3 | $54,170.55 |
| Investigation/Reporting | 78.8 | $59,243.40 |
| Consumer/Creditors Issues & Communication | 8.1 | $6,603.75 |
| Sale, Disposition & Transfer of Assets | 15.2 | $11,680.20 |
| Pending Litigation | 34.9 | $24,177.15 |
| Claims & Distribution | 4.4 | $3,205.80 |
| **TOTAL:** | **301.7** | **$228,507.75** |

Provided below are narrative summaries of the work performed under each of the above categories, and attached hereto as **Exhibit 2** is Allen Matkins' invoice, containing the billing entries detailing the tasks performed by the firm's attorneys and staff during the Application Period.

Allen Matkins endeavored to staff each task efficiently, using a core team of attorneys, with specialized assistance as necessary. Again, Allen Matkins also applied a 10% discount to its ordinary billing rates for this matter, as well as rate freeze for all attorneys and paralegals for the duration of this action. On average, Allen Matkins' fees accrued at approximately $76,000 per month, reflecting an approximate 50% reduction in the monthly fee accrual rate as compared to the First Fee Application.

### 1.    General Receivership

The services in this category generally relate to work at the initial stages of the case. Allen Matkins personnel (a) reviewed pleadings and identified and addressed critical case administration matters; (b) conferred extensively with the Plaintiffs, the Receiver, and his professionals in order to develop the Receiver's document recovery, review, and analysis strategy; (c) through counsel, coordinated with the Individual Defendants to address administrative matters, including the removal of their personal property from Receivership Entities' (now abandoned) former business offices; and (d) corresponded extensively with relevant parties regarding the Receivership Entities' pre-receivership business administration practices.

In addition to the foregoing, Allen Matkins personnel expended time in this category assisting the Receiver in addressing matters that arose as a necessary consequence of the Receiver's appointment and suspension of the Receivership Entities' business operations, including issues relating to final payroll records for former employees and the wind-down and termination of the Entities' 401(k) plan. Specifically, Allen Matkins personnel (a) conducted legal analysis regarding the Receiver's duties with respect to those matters; (b) communicated with relevant third-party stakeholders to obtain critical information relevant to Allen Matkins' analysis; and (c) conferred with the Receiver to begin developing a strategy to resolve these issues. Additional detail regarding Allen Matkins' and the Receiver's anticipated approach to these matters is included in the Report.

### 2. Asset Recovery & Management

The services in this category generally relate to the Receiver's efforts to ensure compliance with the asset freeze entered as part of the Initial Appointment Order and to obtain the prompt turnover of Assets and records relevant to the receivership. Allen Matkins personnel (a) analyzed title reports and conducted equity analyses relating to two potential real property assets; (b) attended to matters relating to the potential recovery of assets belonging to the Receivership Entities, including by conferring with counsel for the Individual Defendants to identify additional receivership assets and by coordinating with financial institutions to ensure that bank account funds are properly turned over in accordance with the Preliminary Injunction; and (c) prepared pleadings to authorize the turnover, marketing, and sale of a real property asset.

In addition to the above, Allen Matkins expended time in this category facilitating the Receiver's abandonment of the Receivership Entities' lease interest in its Las Vegas and Los Angeles offices, and the personal property remaining therein. As further detailed in the Report, Allen Matkins personnel (a) advised the Receiver regarding correspondence to the landlords effectuating the leasehold abandonments; (b) conducted UCC searches and related legal analysis to assess the Receiver's duties, if any, with respect to the abandoned

personal property; and (c) serve as a liaison between the Receiver and third parties purporting to hold secured interests in such property.

### 3.    Investigation & Reporting

The services in this category generally relate to the Receiver's investigation of the business and financial activities of the Receivership Entities and their principals and agents.  Among other things, Allen Matkins devoted significant time during the Application Period to (a) preparing and serving numerous document requests and subpoenas in connection with the Receiver's asset recovery and document review and analysis efforts, reviewing records produced pursuant to such requests and subpoenas, and conferring with representatives for financial institutions to resolve issues regarding the form and manner of production; (b) reviewing materials produced to the Receiver in response to his document requests; (c) coordinating with the Receiver and his Professionals to identify additional subpoena and demand letter targets; (d) assisting the Receiver's efforts to trace receivership funds to potential receivership assets, including by analyzing reporting prepared by the Receiver's forensic accountants; (e) coordinating with third-party tax platforms and other data holders to facilitate the Receiver's access to Receivership Entity records; (f) working with the Receiver to identify potential additional receivership entities; and (g) preparing pleadings in compliance with the Receiver's reporting obligations and in connection with the parties' briefing regarding the Preliminary Injunction.  Allen Matkins also expended time investigating a third-party lender that, in the pre-receivership period, contracted with the Receivership Entities to provide financing for Entity customers who could not afford to pay for the Entities' purported services.  Among other things, Allen Matkins' work included extensive communications with the lender through counsel, issuance of a subpoena for relevant records, and multiple requests for supplemental productions in response to the lender's initial production.

### 4.    Consumer/Creditors Issues & Communication

The services in this category relate to Allen Matkins' communications with alleged consumer victims and other creditors of the Receivership Estate.  In particular, Allen

Matkins personnel: (a) directed former employees and other inquirers to the Receiver regarding questions concerning a prospective receivership claims process and performed related legal analysis; (b) performed legal analysis to assist the Receiver and his tax professional in addressing issues arising from unfiled tax returns for former Receivership Entity consumers; and (c) coordinated with the Receiver to publish notices warning consumers of attempted solicitations by suspected affiliates of the Receivership Entities offering similarly suspicious tax-resolution services.

### 5.    Sale, Disposition & Transfer of Assets

Services in this category generally relate to Allen Matkins' assistance to the Receiver in connection with the turnover, sale, or liquidation of Receivership Assets.  In particular, Allen Matkins conferred with the Receiver regarding legal issues relating to the transfer of title to one vehicle and one real property asset formerly held by the Individual Defendants.  Allen Matkins personnel also coordinated with the plaintiff Federal Trade Commission and counsel for the Individual Defendants to facilitate the turnover of such assets, and prepared the necessary pleadings to obtain Court approval to effectuate the turnover and prospective sale.  Based on presently available information , the Receiver believes these assets may have aggregate value in the hundreds of thousands of dollars.

### 6.    Pending Litigation

Services in this category largely related to addressing nine (9) known pending litigation matters involving one or more Receivership Entities.  Allen Matkins personnel continued to (a) identify additional, previously undiscovered pending litigation matters; (b) analyze the dockets of the pending litigation matters for upcoming proceedings or information that may impact the instant receivership; (c) prepare and file notices of the receivership and copies of the Initial Appointment Order and Preliminary Injunction in the pending actions; (d) confer with counsel for the litigants (or with the litigants themselves, if they were not represented) to advise them of the commencement of the receivership and the resulting litigation stay; and (e) attend hearings in the pending matters for the limited purpose of advising the respective courts of the existence and status of the receivership.

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

Furthermore, Allen Matkins expended time in this category communicating with counsel for a prospective plaintiff in a contemplated litigation matter to advise them of the litigation-stay provisions of the Preliminary Injunction.

### 7.     Claims & Distribution

The services in this category generally related to Allen Matkins assisting or advising the Receiver in connection with asserted and prospective claims against the Receivership Estate.  Allen Matkins personnel primarily expended time in this category by conducting legal analysis regarding prospective claims held by former Receivership Entity employees.

### 8.     Allen Matkins' Expenses

During the Application Period, Allen Matkins incurred $1,203.67 in expenses. These expenses are primarily for filing and service fees.

## V.     STAPLETON'S FEES AND EXPENSES.

### A.     The Receiver's Retention of Stapleton

Stapleton was initially retained by the Receiver upon his appointment under the Initial Appointment Order.  The Receiver selected Stapleton as his forensic accountant due to Stapleton's extensive expertise in forensic accounting analysis, which has made the firm an invaluable asset for the Receiver's investigation of the myriad of Receivership Entities and related financial accounts involved in this matter.  They integrate financial, operational, and digital expertise to take control of assets and stabilize operations, while conducting thorough forensic investigations.

### B.     Services Rendered by Stapleton

During the Application Period, Stapleton provided critical investigative and analytical support to the Receiver, primarily focusing on asset tracing and assessments of financial accounts held by or for the benefit of the Receivership Entities.  Stapleton conducted comprehensive analyses of financial accounts to track cash flows between the Receivership Entities and third parties and to identify potential misappropriation of consumer funds.  In performing this work, Stapleton consolidated and analyzed data from

multiple sources, including bank statements, accounting records, wire details, and transaction records, together with information produced by the Plaintiffs and third parties in response to subpoenas issued by Allen Matkins. Stapleton's thorough examination uncovered significant transactions across various entities related to the defendants and has supported the Receiver's ongoing asset recovery efforts. Attached hereto as **Exhibit 3** is Stapleton's invoice, containing the billing entries detailing the tasks performed by the firm's personnel during the Application Period.

### 1. Investigation and Document Production

During the Application Period, Stapleton supported the Receiver's investigation of the Receivership Entities and Individual Defendants through a detailed review of company records obtained during the operational takeover, as well as through production from related entities and individuals. Stapleton reviewed thousands of pages of documents produced by financial institutions and other third parties in possession of Receivership Entity records. Through this work, Stapleton identified transactions of interest and helped direct the investigation toward assets with potential recovery value for the Receivership Estate.

To further analyze the use of cash, Stapleton reviewed affiliated companies and entities to determine whether any personal relationships existed that could indicate misappropriation of funds.

In addition, Stapleton conducted targeted searches of more than two million company emails and records to identify supporting evidence and documentation relevant to the Receiver's efforts to recover assets purchased by the Individual Defendants using Receivership Entity funds for personal purposes.

### 2. Assistance with Consumer Information

Stapleton assisted the Receiver's Professionals in obtaining access to records needed to identify individuals targeted through the marketing and business practices of the Receivership Entities. This included helping restore access to call-center files and staff-generated documents detailing sales tactics and consumer communications. This

work also supported SLBiggs in regaining access to consumer tax information and the status of those tax filings.

### 3. Recovery of Receivership Assets

Stapleton conducted investigations into several large assets the Individual Defendants claimed to personally own, analyzing transfers and payments made either directly by the Receivership Entities or indirectly through deposits to the Individual Defendants that enabled substantial purchase or down-payment transactions.  Stapleton continues to review transactions of note; additional detail is provided in the Report.

### 4. Information Technology Services

Stapleton coordinated information technology and computer forensics services for the Receiver's team, ensuring the preservation and accessibility of data obtained from the company.  This work included the secure backup and storage of all retrieved data, as well as the creation of virtual access environments that enabled the Receiver and its professionals to review and analyze the information for investigative purposes.

Stapleton personnel billed the following amounts during the Application Period:[5]

| Period | Total Fees Billed | Expenses |
|---|---|---|
| November 2025 | $52,519.44 | $11.49 |
| December 2025 | $33,383.09 | $826.74 |
| January 2026 | $14,095.00 | $797.54 |

## VI. SLBIGGS' FEES AND EXPENSES.

### A. The Receiver's Retention of SLBiggs

SLBiggs was initially retained by the Receiver following his takeover of the Receivership Entities' Las Vegas and Los Angeles offices.  The Receiver selected SLBiggs as his tax professional due to SLBiggs' expertise in tax compliance, planning, and

---

[5] Stapleton's fees and expenses include amounts incurred by SmarterSolutions, Inc., which assisted the Receiver with information technology and computer forensics and data preservation services.  SmarterSolutions, Inc.'s invoices are also included in **Exhibit 3** to this Application.

controversy work, which has made the firm an invaluable asset in assisting the Receiver with evaluating the Receivership Entities' tax-related services.

### B.    Services Rendered by SLBiggs

During the Application Period, SLBiggs provided critical tax advisory and analytical support to the Receiver, with primary emphasis on assessing the Receivership Entities' tax posture and evaluating issues arising from the tax-resolution services they purportedly provided to consumers.  SLBiggs also assisted the Receiver in analyzing relevant payroll records and addressing matters concerning the Receivership Entities' 401(k) plan, including preliminary review and analysis of plan administration, compliance, and dissolution questions.  Attached hereto as **Exhibit 4** is SLBiggs' invoice, containing the billing entries detailing the tasks performed by the firm's personnel during the Application Period.

By way of summary, SLBiggs personnel billed the following amounts during the Application Period:

| Period | Total Fees Billed | Expenses |
|---|---|---|
| November 2025 | $1,936.00 | $0.00 |
| December 2025 | $1,823.00 | $0.00 |
| January 2026 | $7,977.50 | $0.00 |

## VII.    SR LAW'S FEES AND EXPENSES.

### A.    The Receiver's Retention of SR Law

SR Law was retained by the Receiver at the outset of the receivership.  The Receiver selected SR Law as his local Nevada counsel due to SR Law's reputation in the Las Vegas legal community and its familiarity with local laws, policies and procedures potentially applicable to the administration of the Estate.

### B.    Services Rendered by SR Law

During the Application Period, SR Law provided critical local counsel support to the Receiver, primarily in connection with outstanding case administration deadlines,

filings, and court proceedings.  Among other things, SR Law ensured outstanding filing deadlines were satisfied, provided logistical support in Las Vegas on matters arising in connection with this matter and other litigation matters involving the Receivership Entities pending at the time of the Receiver's appointment, and reviewed and assisted with the submission of the Receiver's filings in this matter.  A complete description of the services rendered by SR Law can be found in the invoices collectively appended hereto as **Exhibit 5**.

By way of summary, SR Law attorneys and staff billed the following amounts during the Application Period:

| Period | Total Fees Billed | Expenses |
|---|---|---|
| First Fee Application | $6,702.50 | $1,182.12 |
| November 2025 | $693.50 | $3.50 |
| December 2025 | $3,443.50 | $3.50 |
| January 2026 | $352.00 | $0.00 |

As noted previously, the fees and expenses sought by SR Law in this Application include amounts that were incurred in the period addressed in the First Fee Application but were denied by the Court's *Order Granting, In Part, First Interim Application for Payment of Fees and Reimbursement of Expenses* (ECF No. 76) due to an inadvertent omission of the complete record substantiating SR Law's fees.  This omission has been cured; **Exhibit 5** includes both (i) the full records supporting the SR Law fees and expenses incurred in the period addressed in the First Fee Application and (ii) the full records supporting the amounts incurred during the current Application Period.

## VIII. THE FEES AND EXPENSES INCURRED ARE REASONABLE AND SHOULD BE ALLOWED.

The Receiver and his Professionals respectfully submit that the fees and expenses they incurred during the Application Period are reasonable, and should be allowed and

LAW OFFICES
**Allen Matkins Leck Gamble Mallory & Natsis LLP**

4928-0248-6165

paid. Accordingly, the Receiver reaffirms his request that the Court approve the fees and expenses requested and authorize him to make payment in full thereof.

## IX.    CONCLUSION.

For the foregoing reasons, the Applicants respectfully request that this Court enter an order:

1.    Granting this Fee Application in its entirety;

2.    Approving the Receiver's fees and expenses, in the respective amounts of $242,303.75 and $9,952.80;

3.    Approving Allen Matkins' fees and expenses, in the respective amounts of $228,507.75 and $1,203.67;

4.    Approving Stapleton's fees and expenses, in the respective amounts of $99,997.53 and $1,635.77;

5.    Approving SLBiggs' fees and expenses, in the respective amounts of $11,736.50 and $0.00;

6.    Approving SR Law's fees and expenses, in the respective amounts of $11,188.00 and $1,189.12; and

7.    Authorizing the Receiver to pay himself and his Professionals the above-approved fees and expenses from the funds of the Estate.

Dated:  March 27, 2026

ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
EDWARD G. FATES
JOSHUA A. DEL CASTILLO
ALPHAMORLAI L. KEBEH

By:        /s/  Alphamorlai L. Kebeh
ALPHAMORLAI L. KEBEH
Attorneys for Receiver
STEPHEN J. DONELL